**IN THE UNITED STATES DISTRICT COURT
OF MASSACHUSETTS**
**Boston Division**

| | |
|---|---|
| _____<br>ELLEN MARIE CHRISTENSEN,<br>individually and on behalf of others<br>similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BARCLAYS BANK DELAWARE<br>and<br>STILLMAN LAW OFFICE, LLC,<br><br>    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:18-cv-12280-MPK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
BARCLAYS BANK DELAWARE'S MOTION TO COMPEL ARBITRATION**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Sections 3 and 4 of the Federal

Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), Defendant Barclays Bank Delaware ("Barclays")

respectfully moves this Court to (a) compel Plaintiff Ellen Marie Christensen ("Plaintiff") to

submit her individual claims against Barclays to arbitration; (b) dismiss Plaintiff's putative class

claims with respect to Barclays; and (c) dismiss the Complaint as to Barclays or stay Plaintiff's

claims against Barclays while arbitration proceeds.  In support of the Motion, Barclays states as

follows:

## I. INTRODUCTION

Plaintiff's Complaint attempts to assert individual and putative class claims (the

"Claims") against the Defendants for alleged violations of the Fair Debt Collection Practices Act,

15 U.S.C. §§ 1692 _et. seq._ ("FDCPA") and related state-law statutory claims.  _See generally_

Compl. (ECF No. 1-1).  Barclays now moves this Court to compel arbitration of Plaintiff's

claims against Barclays and to dismiss Barclays from the lawsuit or stay the action as to Barclays while arbitration proceeds.

Plaintiff voluntarily applied for, opened and used her credit card account with Barclays. She thereby agreed to its terms and conditions, which include a valid, enforceable, and conspicuous mandatory arbitration clause that prohibits her from pursuing the Claims on a class or representative basis. Under the Federal Arbitration Act and controlling precedent, these provisions must be enforced. Thus, as explained further below, Plaintiff's individual claims should be referred to arbitration and her putative class claims should be dismissed.

## II.    STANDARD OF REVIEW

Under the Federal Arbitration Act ("FAA"), a "written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kindred Nursing Centers Ltd. P'ship v. Clark*, U.S., 137 S. Ct. 1421, 1426 (2017) (quoting 9 U.S.C. § 2). The FAA "establishe[d] a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[I]t is beyond dispute that the FAA was designed to promote arbitration."). The Supreme Court has noted that "any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

Nevertheless, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478

(1989). Thus, "[t]he threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986). The question of whether the parties agreed to arbitrate is determined by state contract law principles. *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts [and] we agree []that Massachusetts contract law applies."). Where an agreement exists and the asserted claims fall within the scope of the agreement, the arbitration agreement should be "rigorously enforce[d] . . . according to [its] terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

Section 2 of the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable" to the same extent as any contract. 9 U.S.C. § 2. Section 4 of the FAA commands that a district court "shall" issue "an order directing the parties to proceed to arbitration in accordance with the terms of [their] agreement." 9 U.S.C. § 4. Further, Section 3 of the FAA requires a district court to stay proceedings when the issue is "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. When such an agreement exists, "the Act leaves no room for the exercise of discretion," but requires arbitration and a stay of all court proceedings. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *accord Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156 (3d Cir. 1989) (if an issue is arbitrable, the FAA leaves a court without authority or discretion).

Under Section 4 of the FAA, "the role of courts is 'limited to determining two issues: (i) whether a valid agreement or obligation to arbitrate exists, and (ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Jacobs v. USA Track & Field*, 374 F.3d

85, 88 (2d Cir. 2004) (*quoting Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003)). *Accord Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 5 (1st Cir. 2014) (reversing denial of motion to compel arbitration); *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (in ruling on a motion to compel, the court must determine whether: "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.") (*quoting Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155 (D. Me. 1999)).

Once the movant has made a *prima facie* case that an arbitration agreement exists, the burden to negate the existence of such an agreement shifts to the opposing party. *See Hines v. Overstock.com, Inc*., 380 F. App'x 22, 24 (2d Cir. 2010) (To sustain its *prima facie* burden, the party seeking to compel arbitration must simply show that an arbitration agreement existed, not that the agreement would be enforceable.). Once the burden has shifted to the plaintiff, she must "unequivocally deny" the existence of the Arbitration Agreement. *Perez v. Main Brigade, Inc*., No. C 07-3473, 2007 WL 2990368, at * 4 (N.D. Cal. Oct. 11, 2007). If there is no genuine issue of fact concerning the formation of the agreement, arbitration must be compelled. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009).

## III.    FACTUAL BACKGROUND

Barclays is a state chartered financial institution organized under the laws of Delaware and headquartered in Wilmington, Delaware. *See* Exhibit A (Declaration of David Hensey ("Hensey Decl.")) ¶ 4. As part of its business, Barclays offers, issues and services credit card accounts. *Id.* Plaintiff became the holder of a BJ's Visa Platinum-branded credit card account originally assigned an account number ending in 7039 (the "Account") that was issued by

Barclays. *Id*. ¶ 3. Plaintiff applied for the Account on December 5, 2010, as reflected in a screenshot of certain data provided in her application (the "Application"). *Id*. ¶ 5. A redacted copy of the Application is attached to the Hensey Declaration as Exhibit 1.

Plaintiff's Application was accepted and, on December 9, 2010 Barclays mailed the Card Mailer, which included the credit card for the Account, Cardmember Agreement (the "Agreement"), Privacy Statement, Rewards Program Terms and Conditions, and card activation instructions to Plaintiff at the address that she provided in association with the Account. Hensey Decl. ¶ 8. A copy of the Agreement is attached to the Hensey Decl. as Exhibit 2. Plaintiff activated the credit card by calling Barclays on December 13, 2010 from the phone number 978-688-2780. *Id.* ¶ 8. The Agreement provides that "[b]y signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement." *Id.* ¶ 9; *id*. Ex. 2 at p. 1. Further, the Agreement includes a mandatory arbitration provision for resolving claims, disputes or controversies between Barclays and Plaintiff relating to the Account. *Id.* Ex. 2 at p. 2. Finally, the Agreement includes a provision concerning asserted class action claims: "Claims made and remedies sought as part of a class action, private attorney general or other representative action (hereafter all included in the term "class action") are subject to arbitration on an individual basis, not on a class or representative basis." *Id*.

After the Account was opened and the Agreement was sent to Plaintiff, Plaintiff used the Account for numerous purchases. Hensey Decl. ¶ 10. The back of the card that Plaintiff used to make the purchases states that use of the card was subject to the Agreement. *Id*. ¶ 11. Barclays sent Plaintiff regular monthly billings statements to her address and Plaintiff made certain payments toward the balance owed on the Account in response to those statements. *Id.* ¶ 10. A copy of relevant Account statements (partially redacted) showing Plaintiff's purchases and

payments are attached to the Hensey Declaration as Exhibit 3.  Further, Barclays has no record of any mail being returned that it had sent to Plaintiff regarding the Account.  *Id.* ¶¶ 8, 10.  On November 7, 2017, Barclays brought a collections action against Plaintiff in the Lawrence, Massachusetts District Court, in which judgment was entered against Barclays.  *See* Compl. Now Plaintiff asserts claims against Barclays based on allegations that Barclays and its attorneys violated Massachusetts law as well as the Fair Debt Collection Practices Act ("FCRA"), 15 U.S.C. § 1692 *et seq.  Id.*

The relevant arbitration provision in the Agreement states as follows:

**Arbitration.**

At the election of either you or us, any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as specifically provided in this Agreement)[.]    Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed.    The Administrator selection process is set forth below.  For purposes of this provision, "you" includes any authorized user on the Account, and any of your agents, beneficiaries or assigns; and "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns, and to the extent included in a proceeding in which Barclays is a party, its service providers and marketing partners.  Claims made and remedies sought as part of a class action, private attorney general or other representative action (hereafter all included in the term "class action") are subject to arbitration on an individual basis, not on a class or representative basis.

*****

No class actions joinder or consolidation of any Claim with a Claim of any other person or entity shall be allowable in arbitration, without the written consent of both you and us.

*****

ARBITRATION WITH RESPECT TO A CLAIM IS BINDING AND NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IN ARBITRATION YOU AND WE WILL NOT HAVE THE RIGHTS THAT ARE PROVIDED IN COURT INCLUDING THE RIGHT TO A TRIAL BY JUDGE OR JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN PROCEEDINGS BROUGHT BY OTHERS SUCH AS CLASS ACTIONS OR SIMILAR PROCEEDINGS. IN ADDITION, THE RIGHT TO DISCOVERY AND THE RIGHT TO APPEAL ARE ALSO LIMITED OR ELIMINATED BY ARBITRATION. ALL OF THESE RIGHTS ARE WAIVED AND ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION.

Hensey Decl. Ex. 2 at p. 2.

By applying for, keeping, and using the Account, Plaintiff accepted the terms and conditions for the Account set forth in the Agreement, including the arbitration clause and class waiver. Thus, Plaintiff's individual dispute with Barclays must be arbitrated in accordance with that Agreement and her putative class claims against Barclays are prohibited and should be dismissed.

## IV. ARGUMENT

The Agreement into which Plaintiff entered is valid and enforceable, and requires, among other things, arbitration of any individual claims relating to the Account at the demand of either party. *See* Hensey Decl. Ex. 2 at p. 2. Likewise, the Agreement provides that any asserted class claims are subject to arbitration on an individual basis, not on a class or representative basis. *Id*. Plaintiff initiated this lawsuit requesting that the court adjudicate her claims against Barclays, both individually and on a class basis. *See* Compl. However, Plaintiff's individual claims against Barclays are clearly within the scope of the binding arbitration provision, and her class allegations are clearly prohibited. Accordingly, and as more fully explained below, Barclays moves this Court to dismiss or stay the individual claims against Barclays, dismiss Plaintiff's

putative class claims with prejudice, and compel arbitration of the individual claims against Barclays pursuant to the provisions of the Agreement.

## A. Plaintiff's Valid Arbitration Agreement is Governed By The FAA, Which Favors Arbitration

The FAA sets forth the general federal law governing arbitration and mandates the enforcement of privately negotiated arbitration agreements. *See* 9 U.S.C. § 3. Indeed, the "preeminent concern" of Congress in passing the FAA was to enforce private agreements, a concern which requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). As explained by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), the FAA was enacted in response to "widespread judicial hostility to arbitration agreements" and "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" (internal citations omitted). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.*; *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (reaffirming the "emphatic federal policy in favor of arbitral dispute resolution" and directing that "[a]greements to arbitrate that fall within the scope and coverage of the [FAA] must be enforced in state and federal courts."); *Italian Colors Rest.*, 570 U.S. at 233 (emphasizing that the text of the FAA "reflects an overarching principle that arbitration is a matter of contract"); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (When it is apparent that certain claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. Pursuant to the FAA, an agreement to arbitrate is a matter of contract law and "shall be valid, irrevocable, and enforceable." *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14, 16 (D. Mass. 2018).

Where the parties have entered into a valid and binding agreement to arbitrate, a party aggrieved by another's failure to arbitrate may move to compel arbitration pursuant to the terms of the agreement.  *See* 9 U.S.C. § 4. The FAA leaves no discretion to a district court, but instead "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter*, 470 U.S. at 218 (emphasis in original); *see also Oyola*, 295 F. Supp. 3d at 17 ("In the event a valid arbitration agreement does exist, the court shall promptly compel arbitration and either stay the action pending arbitration or dismiss it.").

Moreover, federal law dictates that arbitration agreements are to be construed as broadly as possible, and any doubts must be resolved in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration…"); *see also AT&T Techs.,* 475 U.S. at 650 (Doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003).  In other words, "doubts should be resolved in favor of arbitration," and "[t]he presumption of arbitrability is 'particularly applicable' where an arbitration clause is broadly worded.'"  *Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898, 901 (11th Cir. 2004) (*quoting AT& T Techs.*, 475 U.S. at 650 and citing *Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014)); *Brayman Const. Corp.,* 319 F.3d at 625 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

Given the strong federal policy favoring arbitration, it is "the party resisting arbitration [which] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91 (2000); *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) (finding that "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum"). The party opposed to arbitration cannot meet its burden by making "generalized attacks on arbitration that rest on 'suspicion of arbitration.'" *Randolph,* 531 U.S. at 89-90.

Under the FAA, courts throughout the country, including the United States Supreme Court, routinely enforce arbitration agreements in consumer contracts like the one here between Plaintiff and Barclays. *See*, *e.g*., *CompuCredit Corp. v Greenwood*, 565 U.S. 95 (2012) (credit card agreement); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (cell phone services contract); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006) (consumer loan agreement); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan); *Randolph*, 531 U.S. 79 (2000) (finance contract for purchase of mobile home); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-74 (1995) (termite protection contract); *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14 (D. Mass. 2018) (granting defendant's motion to compel arbitration provision included in a credit card Cardholder Agreement); *Brayman Constr. Corp. v. Home Ins. Co.,* 319 F.3d 622 (3d Cir. 2003), (granting motion to compel arbitration and rejecting plaintiff's argument that the language "any transaction involved" was not ambiguous); *Smith v. Credit Acceptance Corp.,* No. 3:16-CV-1675, 2017 WL 105999 (M.D. Pa. Jan. 11, 2017) (granting motion to compel arbitration when the operative agreement contained an 'Agreement to Arbitrate'); *Scott v. EFN Invs., LLC*, 312 F. App'x. 254 (11th Cir. 2009) (consumer sales contract for the purchase of a vehicle); *Livingston v. Assocs. Fin., Inc*., 339 F.3d.

553 (7th Cir. 2003) (home equity loan); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302 (4th Cir. 2001) (home improvement loan agreement); *Johnson v. W. Suburban Bank*, 225 F.3d 366 (3d Cir. 2000) (consumer lending agreement); *Keith v. Wells Fargo Fin. Am., Inc.*, Case No. 8:10-cv-1588-T-33EAJ, 2010 WL 4647227 (M.D. Fla. Nov. 9, 2010) (consumer credit card agreement).

A trial court's role in deciding a motion to compel arbitration under the FAA is limited to a simple two-step inquiry. Did the parties agree to arbitrate and does the dispute fall within the scope of the arbitration provision? 9 U.S.C. §§ 2, 4; *see, e.g., Bazzle*, 539 U.S. at 451-53. If the Court determines that the answer to both questions is "yes," then the FAA requires the Court to enforce the arbitration agreement and compel arbitration. The FAA "leaves no place for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts *shall* direct the parties to proceed to arbitration…" *Dean Witter,* 470 U.S. at 218 (emphasis in original).

These criteria are clearly satisfied here. Accordingly, and in light of the well-settled public policy in favor of arbitration, the Court should compel Plaintiff to resolve her alleged dispute with Barclays via arbitration and dismiss this action with prejudice. *See Hodgson v. NCL (Bahamas), Ltd.*, 151 F. Supp. 3d 1315, 1316-17 (S.D. Fla. 2015) ("A case in which arbitration has been compelled may be dismissed in the proper circumstances, such as when *all* the issues raised in … court must be submitted to arbitration.") (citations omitted)*; see also Radke v. United Food & Commercial Workers Union Local 951,* 2012 WL 393401, at *4 (W.D. Mich. Feb. 6, 2012) ("[D]ismissal of Plaintiff's Complaint is the appropriate remedy because all of Plaintiff's claims are arbitrable."); *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14 (D. Mass. 2018) (granting credit card issuer's motion to compel arbitration and dismissing the underlying lawsuit).

**B.    Plaintiff and Barclays Entered Into A Valid And Enforceable Written Agreement To Arbitrate Plaintiff's Individual Claims.**

The FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *see also Oyola*, 295 F. Supp. 3d at 16.

Here, it is clear that a written agreement exists that includes an arbitration provision. Plaintiff and Barclays entered into a contract when Plaintiff opened, accepted and used the Account and agreed to its terms and conditions. Hensey Decl. ¶ 5-10. Plaintiff activated the Account, made purchases on the Account, received monthly billing statements, and made monthly payments for a period of time on the Account. *Id.* Either the act of making payments on a balance or the use of a credit card account unequivocally manifests acceptance of the Agreement's terms. *See Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d at 18 (Plaintiff accepted arbitration agreement contained in credit card cardholder agreement by activating the account, receiving the credit card and using it.); *Hays v. Jefferson Capital Systems, LLC*, Case No. 15-14025-GAO, 2017 WL 449590, *1 (D. Mass. February 2, 2017) ("The paper trail further shows that the plaintiff activated and used his card, manifesting his receipt of the agreement and his assent to its arbitration term."); *Grasso v. First USA Bank*, 713 A.2d 304, 309 (Del. Super. 1998); *Mitchell v. Sajed*, 2013 WL 3805041, at *3 (E.D. Va. July 22, 2013) ("It is therefore clear that when Plaintiff received the 2006 Agreement and used the Credit Card, he agreed to the terms."); *Secon Eze v. JP Morgan Chase Bank, NA*, 2010 WL 3189813, at *4 (E.D.N.Y. Aug. 11, 2010) (collecting cases).

The Agreement, which was delivered to Plaintiff, states that, "By signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement." *See* Hensey Decl. Ex. 2 at p. 1.  It further states that:

> At the election of either you or us, any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as specifically provided in this Agreement) Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed.

*Id*. at p. 2.  Barclays seeks arbitration pursuant to the Agreement that Plaintiff accepted.  Plaintiff now bears the burden of any challenge to the validity of the Arbitration Provisions.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  Plaintiff cannot meet that burden here; thus, the arbitration agreement should be enforced.

## C. The Scope of the Arbitration Provisions Encompasses Plaintiff's Claims Against Barclays In This Action.

The Supreme Court dictates that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14, 19 (D. Mass. 2018); *see also IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 450 (1st Cir. 2010); *Highlands Wellmont Health Network, Inc.*, 350 F.3d 568, 576–77 (6th Cir. 2003) (*quoting AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)); *Brayman Const. Corp*, 319 F.3d at 625.  The "presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is . . . broad," as it is in this case.  *Brayman Const. Corp*, 319 F.3d 622, 625 (*quoting AT&T Techs.*, 475 U.S. at 650).

In this case, by agreeing to the Agreement, Plaintiff agreed to arbitrate **"any claim, dispute or controversy** ... arising from or relating in any way to…your Account." *See* Hensey Decl. Ex. 2 at p. 2 (emphasis added). Plaintiff alleges that Barclays sought to collect a debt associated with her Account, *i.e.* the Account's unpaid balance. *See generally* Compl. Thus, all of Plaintiff's claims against Barclays fall squarely within the scope of the Arbitration Provisions in the Agreement because all of those claims relate to the Account and the Agreement.

The FAA requires "any doubts concerning the scope of arbitrable issues" to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *Oyola,* 295 F. Supp. 3d at 19; *see also IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 450 (1st Cir. 2010). Federal law provides that the court should compel arbitration "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir. 2005) (*quoting AT&T Techs.,* 475 U.S. at 650) (emphasis added). As long as a party's claim to arbitration of an issue is "plausible," issues of interpretation should be "passed on to the arbitrator." *Sharon Steel Corp. v. Jewell Coal & Coke Co.,* 735 F.2d 775, 778 (3d Cir. 1984).

Disputes that clearly relate to a cardmember agreement, such as the one here, fall within the broad scope of an arbitration agreement and are thus subject to arbitration. *Oyola*, 295 F. Supp. 3d at 14 (granting credit card issuer's motion to compel arbitration in regard to Plaintiff's claims for violation of the FDCPA, Massachusetts Debt Collections Practices Act and Massachusetts Consumer Protection Act); *Hays v. Jefferson Capital Sys., LLC*, No. 15-14025-GAO, 2017 WL 449590 at *1 (D. Mass. Feb. 02, 2017) (granting motion to compel arbitration because Plaintiff accepted a "[credit] cardholder agreement containing an arbitration provision"

by "activat[ing] and us[ing] his card, manifesting his receipt of the agreement and his assent to its arbitration term").

Plaintiff's dispute with Barclays arises from, and relates to, the Account and her default of her obligations under the Agreement, and Barclays' efforts to collect the balance owed on the Account. As such, these disputes must be resolved by arbitration pursuant to the terms of the Agreement.

**D. The Court Must Compel Plaintiff to Arbitrate Her Claims Against Barclays On An Individual Basis**

Because Plaintiff's claims against Barclays are subject to arbitration, Barclays requests that Plaintiff's putative class claims be dismissed with prejudice. The arbitration must be held on an individual claim and not on a class basis because the Agreement contains a conspicuous class action waiver. *See* Hensey Decl. Ex. 2 at p. 2.

At this point, there can be no doubt that the prohibitions in the Agreement against participating in a class action are enforceable. In two recent cases the U.S. Supreme Court confirmed that a contractual waiver of the right to pursue class claims is enforceable, because under the FAA the parties may agree to limit the issues subject to arbitration and may agree to limit with whom the parties will arbitrate. *See Italian Colors Rest.*, 570 U.S. at 233 (holding a contractual waiver of class arbitration is enforceable under the Federal Arbitration Act even when a plaintiff's cost of individually arbitrating exceeds the potential recovery); *Concepcion*, 563 U.S. at 343-44 (invalidating judicially-created California rule that class action waivers found in consumer adhesion contracts are unenforceable). This rule reflects the "liberal federal policy favoring arbitration" found in Section 2 of the FAA and the "fundamental principle that arbitration is a matter of contract." *Id.* at 338*Concepcion*, 131 S. Ct. at 1745 (omitting internal citations). It also reflects the idea that courts "must rigorously enforce arbitration agreements

according to their terms." *Am. Express Co.*, 570 U.S. at 233 (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). In sum, a waiver of the right to pursue class claims in arbitration or in court is enforceable.

Moreover, the Agreement is expressly governed by Delaware law to the extent that state law applies. *See* Hensey Decl. Ex. 2 at p. 2. Courts have repeatedly held that class action waivers are enforceable, including when they are included in credit agreements. *Edelist v. MBNA America Bank*, 790 A.2d 1249, 1261 (Del. Super. Ct. 2001) ("The surrender of that class action right was clearly articulated in the arbitration amendment [and t]he Court finds nothing unconscionable about it and finds the bar on class actions enforceable."); *see also Sagal v. First USA Bank, N.A.*, 69 F. Supp. 2d 627 (D. Del. 1999); *Pick v. Discover Financial Services, Inc.*, 2001 WL 1180278 (D. Del., Sept. 28, 2001); *Sagal v. First USA Bank, N.A.*, 69 F. Supp. 2d 627 (D. Del. 1999); *Leason v. Merrill Lynch, Pierce, Fenner & Smith*, 1984 WL 8232 ((Del. Ch., Aug. 23, 1984).

Therefore, the Court should enforce the class action waiver provisions under the Agreement, compel the Plaintiff to arbitrate her claims against Barclays individually, and dismiss Plaintiff's putative class claims against Barclays.

## V. CONCLUSION

For the foregoing reasons, Barclays respectfully requests that the Court (a) grant this Motion, (b) compel Plaintiff to submit her claims against Barclays to arbitration, and (c) dismiss the Complaint in this matter as to Barclays or, in the alternative, stay the claims against Barclays pending arbitration.

DATED:  November 7, 2018        **REED SMITH LLP**

By: *_/s/ David Casale_*
    David A. Casale
    20 Stanwix Street, Suite 1200
    Pittsburgh, Pennsylvania 15222
    412-288-3131 (telephone)
    412-288-3063 (facsimile)
    dcasale@reedsmith.com
    *Attorneys for Defendant*
    *Barclays Bank, Delaware*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Memorandum of Law In Support of Defendant Barclay Bank Delaware's Motion to Compel Arbitration was served on November 7, 2018 via the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: */s/ David Casale*_____
        David A. Casale
