UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ELLEN MARIE CHRISTENSEN, *individually and on behalf of others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> BARCLAYS BANK DELAWARE and STILLMAN LAW OFFICE, LLC, <br><br> Defendants. | \* <br> \* <br> \* <br> \* <br> \* <br> \* No. 1:18-cv-12280-ADB <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* |

**<u>MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS
TO COMPEL ARBITRATION AND STAY OR DISMISS THIS ACTION</u>**

BURROUGHS, D.J.

Ellen Marie Christensen ("Plaintiff") filed this action against Barclays Bank Delaware ("Barclays") and Stillman Law Office, LLC ("Stillman"), asserting individual and putative class claims under Massachusetts General Laws Chapter 93A for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et. seq.* ("FDCPA") and Massachusetts Debt Collection Practices Act ("MDCPA"). [ECF No. 1-1 ("Complaint" or "Compl.")]. Currently before the Court are Barclays' and Stillman's motions to compel arbitration of Plaintiff's individual claims, to dismiss Plaintiff's putative class claims, and to dismiss or stay this action. [ECF Nos. 5, 11]. For the reasons set forth below, the motions are <u>GRANTED</u>, the class allegation claims are stricken, and the Court dismisses the Complaint without prejudice in favor of arbitration.

**I.    BACKGROUND**

The Court draws the following facts from the Complaint and from the affidavits and documents submitted in support of the motions to compel arbitration. See Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018).

1

Plaintiff Ellen Marie Christensen is an individual who resides in Lawrence, Massachusetts. Compl. ¶ 1. Defendant Barclays is a financial institution organized under the laws of Delaware with a principal place of business in Wilmington, Delaware. Id. ¶ 2; [ECF No. 6 at 4; ECF No. 6-1 ("Hensey Decl.")]. As part of its business, Barclays offers, issues, and services consumer credit card accounts. Compl. ¶ 5; [ECF No. 6 at 4]. Defendant Stillman is a law firm with a principal place of business in Woburn, Massachusetts. Compl. ¶ 3.

Each year thousands of Massachusetts residents open new consumer credit card accounts with Barclays. Id. ¶ 7. Substantially all of Barclays' consumer credit card accounts opened by Massachusetts residents are governed by cardholder agreements, which provide that the accounts are governed by Delaware law, and, where applicable, federal law. Id. ¶ 8. After originating consumer credit card accounts, Barclays services the accounts by, *inter alia*, sending monthly statements to cardholders and collecting payments. Id. ¶ 9. When a cardholder defaults on an account, Barclays attempts to collect past-due amounts and may request the assistance of a law firm, such as Stillman, to help collect the debt. Id. ¶ 10.

On December 5, 2010, Plaintiff applied for Barclays' BJ's Visa Platinum credit card. Hensey Decl. ¶ 5. Plaintiff's application was accepted, and, on December 9, 2010, Barclays mailed the credit card, Cardmember Agreement (the "Cardmember Agreement"), Privacy Statement, Rewards Program Terms and Conditions, and card activation instructions to Plaintiff. Id. ¶¶ 6, 8; Hensey Decl. Ex. 2. On December 13, 2010, Plaintiff activated the credit card and opened her credit card account (the "Account") by calling Barclays. Hensey Decl. ¶ 8. The Cardmember Agreement provides that "[b]y signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement." Id. ¶ 9.

Additionally, the back of the card states that use of the card is subject to the Cardmember Agreement.  Id. ¶ 11.

The Cardmember Agreement includes an arbitration provision for resolving claims, disputes, or controversies between Plaintiff and Barclays, including its employees, parents, subsidiaries, affiliates, beneficiaries, agents, and assigns, that relate to the Cardmember Agreement or Account.  Hensey Decl. Ex. 2 at 2.  In relevant part, the arbitration clause provides:

> At the election of either you or us, any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as specifically provided in this Agreement) Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed. The Administrator selection process is set forth below. For purposes of this provision, "you" includes any authorized user on the Account, and any of your agents, beneficiaries or assigns; and "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns, and to the extent included in a proceeding in which Barclays is a party, its service providers and marketing partners.

Id.  The Cardmember Agreement also includes a provision concerning class action and class arbitration claims that provides, in part:

> Claims made and remedies sought as part of a class action, private attorney general or other representative action (hereinafter all included in the term "class action") are subject to arbitration on an individual basis, **not** on a class or representative basis.
> . . . .
> **No class actions joinder or consolidation of any Claim with a Claim of any other person or entity shall be allowable in arbitration, without the written consent of both you and us**.
> . . . .
> . . . ARBITRATION WITH RESPECT TO A CLAIM IS BINDING AND NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IN ARBITRATION YOU AND WE WILL NOT HAVE THE RIGHTS THAT ARE PROVIDED IN COURT INCLUDING . . . THE

3

RIGHT TO PARTICIPATE OR BE REPRESENTED IN PROCEEDINGS BROUGHT BY OTHERS SUCH AS CLASS ACTIONS OR SIMILAR PROCEEDINGS.

Id.

After opening the Account, Plaintiff used the Account for various purchases. Hensey Decl. ¶ 10. Barclays sent Plaintiff regular monthly billings statements, and Plaintiff made payments towards the balance owed on the Account. Id. ¶ 10; Hensey Decl. Ex. 3. After years of making payments at or around the minimum required, Plaintiff stopped making payments on the Account in late 2013. See Hensey Decl. Ex. 3 at 162–93.

In November 2017, Barclays, represented by Stillman, filed a collection action against Plaintiff in Lawrence District Court seeking a judgment for Plaintiff's past-due debt. Compl. ¶ 16; [ECF No. 21 at 1]. According to the Complaint and documents filed with Barclays' motion to compel, Plaintiff's last payment to Barclays was made on December 11, 2013. Compl. ¶ 18; Hensey Decl. Ex. 3. Plaintiff therefore defaulted on February 2, 2014, one day after the next monthly payment was due. Compl. ¶ 18.

In Lawrence District Court, Plaintiff moved for summary judgment against Barclays on the basis that the action was time-barred under the applicable three-year statute of limitations. Id. ¶ 20. Barclays and Stillman did not file any opposition to Plaintiff's summary judgment motion or appear to contest the motion at a May 18, 2018 hearing, and the Lawrence District Court granted Plaintiff's summary judgment motion. Id. ¶¶ 21–22.

This putative class action followed. Plaintiff alleges that Barclays and its attorneys violated the FDCPA, 15 U.S.C. §§ 1692 *et. seq.*, and Massachusetts debt collection regulations actionable under Massachusetts Chapter 93A by suing her, and similarly situated consumers, on time-barred debts. Compl. ¶ 35; [ECF No. 6 at 6]. On August 22, 2018, Plaintiff filed the

4

Complaint in the Superior Court of Suffolk County, Massachusetts. [ECF No. 1-1]. On October 31, 2018, Barclays removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. [ECF No. 1 at 1]. On November 7, 2018, Barclays moved to compel arbitration and dismiss or stay, [ECF No. 6], and on November 16, 2018, Stillman also filed a motion to compel arbitration and dismiss or stay, [ECF No. 11]. On December 7, 2018, Plaintiff filed her oppositions to those motions, [ECF Nos. 21, 22], and on December 17, 2018, Barclays filed a reply, [ECF No. 26].

## II.  LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was enacted primarily to "overcome judicial hostility to arbitration agreements," Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995), and it "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).

The party seeking to compel arbitration bears the burden of proving that a valid agreement to arbitrate exists, that the movant has a right to enforce it, that the other party is bound by it, and that the claim asserted falls within the scope of the arbitration agreement. Oyola v. Midland Funding, LLC, 295 F. Supp. 3d 14, 16–17 (D. Mass. 2018) (citing Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 293 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019)). Arbitration agreements that are validly formed under state contract law must be enforced except

upon such grounds as make the contract unenforceable or where the FAA is precluded by another federal statute's contrary command. Bekele, 199 F. Supp. 3d at 292–93 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011), then citing CompuCredit Corp. v. Greenwood, 565 U.S. 95, 97 (2012)).

"When an enforceable arbitration agreement exists between the parties, a court may enforce that agreement by staying existing litigation pending arbitration or compelling the parties to arbitrate and dismissing the action. Id. at 293 (citing 9 U.S.C. §§ 3, 4). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original). "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." Id.

### III. DISCUSSION

Barclays asserts that Plaintiff and Barclays entered into a valid Cardmember Agreement containing a clear arbitration provision when Plaintiff activated and proceeded to use her credit card and that the scope of the arbitration clause, which reaches "any claim, dispute or controversy . . . arising from or relating in any way to . . . [Plaintiff's] account," covers this case. [ECF No. 6 at 13–15]. Further, Barclays argues that the Court must compel Plaintiff to arbitrate her claims on an individual basis given that the Cardmember Agreement acted as a waiver of Plaintiff's right to pursue class arbitration. Id. at 15–16. Stillman adds that the claims against it must also be arbitrated because the arbitration clause covers claims against Barclays' "agents," which includes Stillman as Barclays' attorneys. See [ECF No. 11-1]. Plaintiff responds that "there is no competent evidence that Plaintiff entered into the agreement," "there is no competent

6

evidence that the arbitration provision is in the agreement," "there is no competent evidence that the agreement applies to the subject account," "Barclays waived any right to arbitration by suing Plaintiff on the account," "there is no competent evidence of a class action waiver," and that even if there was a class action waiver, it "would not be enforceable." [ECF No. 21 at 2]. Plaintiff also argues that because the Cardmember Agreement included the term "agents" but did not specify that "agents" included attorneys, the issue of Stillman's purported agency creates a "highly fact specific" issue that cannot be resolved at this stage of the litigation. [ECF No. 22 at 2–4].

As an initial matter, Stillman was Barclays' attorney, and therefore its agent, in the lawsuit that underlies this action, and the Court will compel arbitration as to both Barclays and Stillman or to neither. The arbitration clause unambiguously includes Barclays' "agents," and the Court will address the arguments that Barclays and Plaintiff have made as applying equally to Stillman.

With respect to Plaintiff's argument that no agreement was formed, the record supports the conclusion that Plaintiff accepted the terms of the Cardmember Agreement when she activated and used her Barclays credit card. The Court need not, however, resolve this issue because the Supreme Court has held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Buckeye Check Cashing, 546 U.S. at 449. Therefore, to the extent that Plaintiff contends that she never entered into the Cardmember Agreement as a whole, that dispute must still be raised in arbitration. See Oyola, 295 F. Supp. 3d at 17 (compelling arbitration on issues pertaining to "the receipt and formation of the Cardmember Agreement, as a whole"); Hays v. Jefferson Capital Sys., LLC, Case No. 15-14025-GAO, 2017 WL 449590, *1 (D. Mass. Feb. 2, 2017) (rejecting objections to the Court's

7

consideration of evidence showing the formation of an agreement to arbitrate where the paper trail showed "that the plaintiff activated and used his card, manifesting his receipt of the agreement and his assent to its arbitration term").

Plaintiff's argument that there is no competent evidence showing that the arbitration provision is part of the Cardmember Agreement is unavailing. Contrary to Plaintiff's assertions, [see ECF No. 21 at 5 (claiming that no arbitration provision is discernable in the Cardmember Agreement)], the Cardmember Agreement that was filed with the Court contains an arbitration clause, and Barclays has supported its assertion that Plaintiff received and accepted that agreement through the affidavit of David Hensey, a Group Leader for Business Implementation at Barclays who reviewed and attached evidence documenting Plaintiff's acceptance of the Cardmember Agreement. See Hensey Decl. ¶¶ 1–3, Exs. 1–3. Plaintiff's assertion that Mr. Hensey's affidavit does not comply with the Federal Rules of Evidence is without merit. See Fed. R. Evid. 803(6) (business records exception to rule against hearsay). Mr. Hensey's responsibilities include monitoring records related to customer accounts, and he has credibly attested, based on his review of Barclays' systems and business records, that Barclays sent Plaintiff the Cardmember Agreement on December 9, 2010, and the attached documentary evidence demonstrates Plaintiff's acceptance of those terms, which include the arbitration agreement. Hensey Decl. ¶ 8.

Plaintiff's contention that the arbitration clause does not cover the Account is likewise unpersuasive. The arbitration clause in the Cardmember Agreement covers claims "arising from or relating in any way to this Agreement or your Account," based on "any . . . source of law." Hensey Decl. Ex. 2 at 2. This arbitration clause is at least susceptible to an interpretation that it covers this action given that this action concerns the legality of Barclays' collection efforts for

Plaintiff's past due Account debt, which arguably relates to the Account. See IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 450 (1st Cir. 2010) ("In evaluating the scope of the arbitration clauses, we are mindful that 'all doubts are resolved in favor of arbitration; arbitration will be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 723 F.2d 155, 159 (1st Cir. 1983)). The Court must therefore compel arbitration unless Barclays has waived its arbitration rights.

Plaintiff argues that Barclays waived its arbitration rights by bringing a collection action in Lawrence District Court because "actions inconsistent with [its] right to arbitration, such as active participation in a lawsuit, shows an intent to relinquish its right to arbitration." [ECF No. 21 at 10 (quoting Nutzz.com, LLC v. Vertrue Inc., No. CIV.A. 1231-N, 2006 WL 2220971, at *8 (Del. Ch. July 25, 2006))]. "Generally, there is a presumption that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.'" Cutler Assocs., Inc. v. Palace Constr., LLC, 132 F. Supp. 3d 191, 199 (D. Mass. 2015) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). A court should, however, decide issues of waiver that are based on litigation conduct. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15 (1st Cir. 2005).

In determining whether arbitration has been waived, courts "ask whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice." Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 948 (1st Cir. 2014). That determination is informed by a "salmagundi of factors," including:

> the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-

related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced.

Id.; see also In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004) ("In this Circuit, no one factor dominates the analytical framework for determining whether a party has implicitly waived its right to arbitrate.").

Here, there has not been an undue delay in the assertion of arbitration rights in this action, and Plaintiff will not suffer unfair prejudice as a result of the Court's compelling arbitration. The Lawrence District Court action was dismissed on Plaintiff's unopposed motion for summary judgment before the claims at issue here were filed. See Compl. ¶¶ 16–22. After the claims at issue were filed, Barclays timely removed this action and then promptly moved to compel arbitration. See [ECF Nos. 1, 5]. The Court is unaware of any discovery having occurred in this action, and no trial date has been set.

Plaintiff argues that Barclays waived arbitration based on the holdings of several state courts, but the Court finds those cases inapposite. Plaintiff emphasizes Cain v. Midland Funding, LLC, 156 A.3d 807 (Md. 2017), but the parties in Cain assumed that Maryland law applied and the motion to compel was filed pursuant to the Maryland Uniform Arbitration Act, not the FAA, which applies here. See Butler v. Mariner Fin., LLC, No. CCB-17-1738, 2017 WL 6406804, at *2–3 (D. Md. Dec. 15, 2017) (distinguishing Cain); see also Allied Home Mortg. Corp., 402 F.3d at 12–13 (explaining that alleged waivers of arbitration rights present the question of whether a "default" has occurred within the meaning of the FAA). Plaintiff also cites Principal Investments v. Harrison, 366 P.3d 688 (Nev. 2016), which concerned a plaintiff who claimed to have been deprived of the right to appear and defend the underlying action as a result of the defendant's fraud on the court. Here, however, Plaintiff appeared and successfully defended the state collection action, and Principal Investments is therefore not analogous. Id. at

698 (recognizing that bringing one claim does not result in waiver of the right to arbitrate another, but holding arbitration right waived where compelling arbitration would "sanctify a fraud upon the court"). Therefore, Barclays did not waive its right to arbitrate Plaintiff's claims through its pursuit of the collection action, and the Court will compel arbitration.

The remaining questions are how to address the class action claims and whether to stay or dismiss this action. Plaintiff's assertion that there is no competent evidence of a class action waiver is foreclosed because as more fully set forth supra, there is competent evidence supporting a finding that the Cardmember Agreement included the arbitration clause. Further, Mr. Hensey's affidavit provides ample evidence that Plaintiff consented to the terms of the Cardmember Agreement, which contains **bold** and ALL CAPS text prohibiting class action joinder in arbitration and informing Plaintiff that she was relinquishing her right to participate in a class action lawsuit. See Hensey Decl. Ex. 2 at 2. Barclays argues that the class claims against it should therefore be dismissed with prejudice. [ECF No. 6 at 15].

Supreme Court precedent establishes that class action and class arbitration waivers are generally enforceable. See Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235–36 (2013) (holding waiver of class arbitration enforceable under the FAA); AT&T Mobility, 563 U.S. at 344 (invalidating a law conditioning enforcement of arbitration on the availability of class procedure because that law "interfere[d] with fundamental attributes of arbitration"). Class action waivers may, however, be unenforceable where their inclusion in an agreement was obscured by conduct of the party seeking to obtain the class action waiver that raises "unconscionability concerns." See Skirchak v. Dynamics Research Corp., 508 F.3d 49, 60 (1st Cir. 2007). Here, no evidence suggests that Barclays engaged in unconscionable conduct or concealed the class action and class arbitration waiver from Plaintiff. The waiver is therefore

valid, and the Court will strike the class action claims. The Court expects that arbitration will resolve Plaintiff's individual claims and sees no reason to maintain an open case on its docket but also sees no reason to dismiss any claims with prejudice. Cf. Oyola, 295 F. Supp. 3d at 19 (granting motion to compel arbitration, strike allegations, and dismiss the case).

## IV. CONCLUSION

Accordingly, the motions to compel arbitration and dismiss or stay this action, [ECF Nos. 5, 11], are GRANTED IN PART. The Court strikes Plaintiff's class action claims, compels arbitration in accordance with the Cardmember Agreement, and dismisses this action without prejudice.

**SO ORDERED.**

April 30, 2019  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE